No. 86-518

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

IN THE MATTER OF

M. J. P., Respondent.

---

APPEAL FROM:   District Court of the Third Judicial District,
               In and for the County of Deer Lodge,
               The Honorable Robert Boyd, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

             Allen Smith, Jr., Warm Springs, Montana

        For Respondent:

             Nick Rotering, Dept. of Institutions, Helena,
             Montana

---

                              Submitted on Briefs: Feb. 13, 1987

                                 Decided:  March 24, 1987

Filed: MAR 24 1987

_____
                  Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

M.J.P. was involuntarily committed to the Montana State Hospital. Prior to the expiration of the commitment period, a petition was filed with the District Court of the Third Judicial District, Deer Lodge County, requesting M.J.P.'s commitment to be extended for a period not to exceed six months. After a hearing, the District Court extended the commitment for six months. M.J.P. appealed. We affirm.

The issues are:

1. Was there sufficient evidence to support the finding of the District Court that M.J.P. was seriously mentally ill as defined by § 53-21-102, MCA?

2. Did the District Court err in committing M.J.P. to the Montana State Hospital rather than to a less restrictive community placement for the treatment of her mental illness?

M.J.P. was committed to the Montana State Hospital (hospital) on May 7, 1986, primarily because of threats she had made on her treating psychologist's life. Pursuant to § 53-21-128, MCA, the psychologist filed a petition on July 24, 1986, requesting an extension of M.J.P.'s commitment for a period not to exceed six months. M.J.P. moved to dismiss the petition.

The hearing on the petition was held on September 12, 1986, and the psychologist testified regarding M.J.P.'s mental illness. The District Court found M.J.P. to be seriously mentally ill and extended her commitment to the hospital for a period of six months. M.J.P. appealed.

I

Was there sufficient evidence to support the finding of the District Court that M.J.P. was seriously mentally ill as defined by § 53-21-102, MCA?

In pertinent part, the definition of "seriously mentally ill" found at § 53-21-102(14), MCA, provides:

> "Seriously mentally ill" means suffering from a mental disorder which has resulted in self-inflicted injury or injury to others or the imminent threat thereof or which has deprived the person afflicted of the ability to protect his life or health. . . .

Simply put, the State must prove in this case that M.J.P. suffered from a mental disorder and that the mental disorder: (1) resulted in self-inflicted injury or injury to others; (2) resulted in the imminent threat of self-inflicted injury or injury to others; or (3) deprived her of the ability to protect her life or health. M.J.P. concedes in her brief that the State has proven to a reasonable medical certainty that she suffers from a mental disorder. The crux of the second element in this case is whether the evidence supported a finding that M.J.P. was an imminent threat to herself or others.

The evidence consists of the testimony of M.J.P.'s psychologist and a written report submitted by him to the court prior to the hearing. That evidence shows that M.J.P. was dangerous to herself and others at the time she was admitted to the hospital in May 1986. At the time of her admission, M.J.P. was depressed and was making suicidal, as well as homicidal, threats. She admitted that if she were allowed to get out, she would buy a gun to kill her examining psychologist. In his report, her psychologist concluded:

3

[M.J.P.] is seriously mentally ill and imminently dangerous to others. She has established a victim which happens to be this examiner and a method of doing me bodily harm, that being purchasing a gun and killing me.

We conclude that the evidence presented does support a finding that M.J.P. was an imminent threat of physical injury to herself or others. We have considered M.J.P.'s argument that because the threats were made upon her admittance to the hospital in May and had not been repeated in the time period preceding the petition in July, the threats were not "imminent". However, we conclude that the threats were "sufficiently recent in time as to be material and relevant as to the respondent's present condition." Section 53-21-126(2), MCA. In addition, the psychologist testified that M.J.P. was on lithium, ascendin, premarin and a thyroid medication. He pointed out that the lithium and ascendin are the treatment strategies for the major depression she experiences. He further emphasized that she had been extremely resistant to any therapeutic intervention, including supervision. This testimony is a reasonable basis for the conclusion of the District Court that M.J.P. should be kept under supervision so that she would properly continue on her medication. We affirm the District Court on this issue.

II

Did the District Court err in committing M.J.P. to the Montana State Hospital rather than to a less restrictive community placement for the treatment of her mental illness?

M.J.P. maintains that the District Court erred in committing her to the hospital, citing § 53-21-127(2)(c), MCA, which provides:

4

> In determining which of the above alternatives to order, the court shall choose the least restrictive alternatives necessary to protect the respondent and the public and to permit effective treatment. The court shall consider and shall describe in its order what alternatives for treatment of the respondent are available, what alternatives were investigated, and why the investigated alternatives were not deemed suitable.

M.J.P. argues that the testifying doctor's recommendation for the commitment to be extended six months was based on her being placed in a group home and then graduated into an apartment under supervision. Therefore, she argues, the testimony establishes the least restrictive environment for M.J.P. would have been a structured community placement, not the hospital. What M.J.P. fails to recognize is the doctor's recommendation in his written report of July 17, 1986:

> It is hereby recommended that [M.J.P.] be recommitted to Montana State Hospital for a period not to exceed six months. It is further recommended that if deemed appropriate, she be conditionally released to the structured supervision of the mental health center in Helena within the commitment period asked.

The District Court committed M.J.P. to the hospital, but ordered that if the hospital staff believes she could be released on a conditional release during the six month extension, then she should be so released. The State points out that the District Court's plan ensures the patient will cooperate with local mental health authorities when she is released because that release is conditioned upon her cooperation. The cooperation referred to pertains to the patient taking her medication, participating in counseling, and any other conditions that may be necessary to prevent a relapse.

5

After careful consideration, we conclude that the District Court did not err in committing M.J.P. to the Montana State Hospital.  The court considered and rejected alternatives other than the commitment ordered.  The requirements of § 53-21-127, MCA, have been met.

Affirmed.

_____
Justice

We Concur:

_____
J. A. Turnage
Chief Justice

_____
John Conway Harrison

_____
L. C. Gulbrandson

_____
John C. Sheehy

_____
William E. Hunt
Justices

6